IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 JUN 13 AM 9: 37
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | }<br>}<br>} |
| Plaintiff, | } CIVIL ACTION NO. |
| v. | }<br>} CV-00-AR-2399-S |
| MERLEE STEWART and TAVARIS HUNT, | }<br>}<br>} |
| Defendants and Cross-Claimants | }<br>} |

ENTERED
JUN 13 2001

### MEMORANDUM OPINION

Before the court are the cross motions by defendants and cross-claimants, Merlee Stewart ("Merlee") and Tavaris Hunt ("Tavaris"), for summary judgment. This action arises out of the untimely death of Samuel Stewart ("Samuel"), who is Merlee's brother, and Tavaris's father. Plaintiff, Reliance Standard Life Insurance Company ("Reliance"), commenced this interpleader and declaratory judgment action by asking the court to determine which party, Merlee or Tavaris, is entitled to death benefits payable under Samuel's insurance policies. Reliance has deposited with the court the sum of $280,600.00, the amount payable under Samuel's life insurance and accidental death and dismemberment policies. For the reasons set forth in the opinion below, Tavaris's motion will be granted, and Merlee's motion will be denied.



**Pertinent and Undisputed Facts**

Despite the procedural history, and the somewhat extensive discovery in this case, the pertinent and undisputed facts of this case are rather straightforward. In October 1972, O'Neal Steel Company ("OSC") hired Samuel, and provided him with a number of benefits, including life insurance. At that time, Samuel designated Merlee and his mother, Rena Bell Stewart ("Rena"), as the beneficiaries under his group life insurance policy, which was underwritten by Protective Life Insurance Company ("Protective").

Sometime thereafter, Provident Life & Accident Insurance Company ("Provident"), became OSC's group life insurance policy underwriter. In 1990, after the death of Rena, Samuel designated Merlee as the sole beneficiary of his Provident group life insurance policy by completing a change of beneficiary form provided by Provident.

In 1998, OSC again changed its group life insurance carrier, this time from Provident to Reliance. It appears that at the time of the issuance of Reliance's new group life insurance policies, OSC did not call upon its employees to designate or re-designate beneficiaries using beneficiary designation forms furnished by Reliance. During her deposition, Donna Cornwell ("Cornwell"), OSC's Benefits Coordinator, stated:

> Q: . . . [D]oes O'Neal Steel go through

2

>       another re-enrollment and beneficiary
>       designation period whenever it changes
>       life insurance carriers?
>
> A:    No. Not as a general rule.
>
> Q:    Is there any requirement, that you know
>       of, to obtain new beneficiary
>       designations whenever O'Neal changes life
>       insurance carriers for its group life
>       programs.
>
> A:    No.

Cornwell Depo., at 33. Due to this flawed internal policy, OSC did not require Samuel, and perhaps its other employees, to complete Reliance's beneficiary designation forms. As a result, Samuel's insurance policies, underwritten by Reliance, never contained a beneficiary designation.[1]

On November 4, 1999, Samuel was killed in an automobile accident.

On August 29, 2000, Reliance filed its complaint for interpleader and declaratory relief, stating that Reliance had received competing claims for Samuel's death benefits from Merlee and Tavaris. Subsequent to the filing of the original complaint, the court allowed Reliance to amend its complaint to include four other children of Samuel, namely, Antonio Stewart, Tamika Stewart,

---

[1] For all the court knows, none of OSC's employees have properly designated their beneficiaries under the Reliance policies. Where the fault lies for this may provide fodder for a future lawsuit, but it is not relevant here.

Samuel Stewart II, and Terri Stewart. This was necessary in order to have all of Samuel's heirs under Alabama's laws of descent and distribution before the court. Because these newly-added parties did not enter an appearance after being properly served, the court entered orders of default judgment against each of them, thereby extinguishing any legal claim they may have to Samuel's death benefits. To the extent they may have had claims, they relinquished them in favor of their brother Tavaris by their inaction.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.

4

Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S. Ct. 1575 (1968)).

A motion for summary judgment should be denied "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997)(quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)).

### Discussion

Merlee contends that the Provident beneficiary forms executed by Samuel in 1990, which were still on file with OSC at the time of his death, satisfy Reliance's policy requirement that the "beneficiary designation must be on file with [Reliance] or the plan administrator and will be effective on the date that the insured signs it." She also contends that Reliance merely "assumed" the insurance coverage provided by Provident. As such, Merlee contends that the old, existing beneficiary designation forms are valid, and that she is, therefore, entitled to Samuel's death benefits.

Tavaris, on the other hand, contends that Reliance did not assume Provident's insurance policy, and instead issued its own completely new policy with new provisions when it became OSC's insurance carrier. Tavaris also claims that Samuel's new Reliance

5

insurance policies and documents are silent as to any beneficiary designations. Tavaris finally points out that it is anomalous, if not impossible, for a designation executed in 1990 to be "effective on the date that the insured signs it" as to a policy that was not issued until years later. The absence of any beneficiary designations under the Reliance policies was verified by Cornwell during her deposition. *See* Cornwell Depo., at 29. For these several reasons, Tavaris contends that Samuel's designation of Merlee as the sole beneficiary under the Provident policy is a nullity insofar as the Reliance policy is concerned, and that he is entitled to Samuel's death benefits pursuant to Alabama's laws of intestacy, which take over if there is no effective beneficiary designation.

Alabama law provides that any "group life insurance policy shall contain a provision that any sum becoming due by reason of the death of the person insured shall be payable to the beneficiary designated by the person insured." Alabama Code § 27-18-9 (1975). In addition, each "group life insurance policy shall contain a provision that the **insurer** will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable." Alabama Code § 27-18-10 (1975) (emphasis supplied). There is nothing in

6

this record to suggest that Reliance, which was the **insurer**, issued to Samuel a certificate indicating "to whom benefits are payable." Neither Reliance, nor OSC, has been sued for any possible shortcomings in this regard.

The fact that Samuel designated Merlee as the sole beneficiary of his **Provident** insurance policies in 1990 had no legal force or effect at the time of Samuel's death. Samuel's designation on Provident's form only applied to the insurance policies issued by **Provident**. The **Provident** policies, and any beneficiary designations thereunder, ceased to have any force or effect once **Reliance** became OSC's insurance carrier in 1998.

Under Alabama insurance law, the intent of the insured can be ascertained only from properly executed written documents. While it might theoretically be possible for an insurer to provide that beneficiary designations in prior policies, whether issued by it or by some previous, unrelated insurer, would constitute an effective beneficiary designation, there is no factual basis for any such contention in this case.

The fact that Alabama law required Reliance to deliver to each person insured under its group life insurance policy, a separate certificate, specifying to whom Samuel's insurance benefits are payable, changes nothing. It is undisputed that no papers issued by **Reliance** designated a beneficiary, and no certificates specifying

7

to whom Samuel's insurance benefits are payable have been produced. In light of these undisputed facts and the law of Alabama, Tavaris, as the sole claiming heir-at-law, is entitled to the insurance proceeds of $280,600.00 paid into the Court's registry by Reliance.

Reliance's motion, insofar as it requests discharge and dismissal, is moot. In this court's order of March 30, 2001, the court stated, "Reliance Standard Life Insurance is hereby released and exonerated from liability to any defendant beyond the amount of interpled funds, and it is relieved of responsibility to participate further in this proceeding." Although the time to ask for attorney's fees and costs has passed, even if Reliance had made a timely motion for attorney's fees and costs, the court would deny the request on the ground that such costs arise out of the "normal course of business". *In Re Mandalay Shores Co-op Housing Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). Not only do insurance companies routinely find it necessary to resort to interpleader in order to avoid possible duplicative liability, but in this case Reliance itself shares the blame for creating the fact situation making interpleader necessary.

### Conclusion

A separate and appropriate order will be entered in conformity with the foregoing opinion.

DONE this 13th day of June, 2001

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE